UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SOUTH CENTRAL UCFW UNIONS AND EMPLOYERS HEALTH & WELFARE TRUST, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:09-CV-1924-B |
| BUNGE OILS, INC., | § § § | |
| Defendant. | § | |

## MEMORANDUM ORDER

Before the Court is Defendant Bunge Oils, Inc.'s Motion for Summary Judgment (doc. 19) and Plaintiff South Central UFCW Unions and Employers Health & Welfare Trust's Motion for Summary Judgment (doc. 22). For the reasons discussed below, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## I.

## BACKGROUND

This action arises out of Defendant Bunge Oil, Inc.'s ("Bunge's") alleged violation of Section 515 of the Employee Retirement Income Security Act ("ERISA"). Under ERISA, Bunge is obligated to pay welfare fund contributions in accordance with the collective bargaining agreement ("CBA") entered into between Bunge and Plaintiff South Central United Food & Commercial Workers Unions and Employers Health & Welfare Trust ("Trust") for the period of time between July 25, 2005 and February 28, 2007. *See* 29 U.S.C. § 1145.

The parties agree on the material facts of the case. (Def.'s Br. Mot. Summ. J. 3; Pl.'s Resp. Br. Def.'s Mot. Summ. J. 3.) The Trust and Bunge entered into a collective bargaining agreement in which Bunge agreed to make contributions to the Trust for each hour worked by an employee covered by the Trust. Article XV of the CBA states:

> "[T]he Company agrees to make contributions to the Trust at the rates charged by the Trust for all hours worked, not to exceed forty (40) hours per week, by each regular full-time employee with thirty (30) days of service covered by this Agreement, subject to the maximum amounts…Contributions to the Trust shall occur by the twentieth day of each month following the month in which the work determining the contributions was made."

(App. to Def.'s Mot. Summ. J. 17.)

The CBA lists the maximum contribution rate as $2.886 per hour for the period between October 1, 2004 and July 24, 2005, $3.191 per hour for the period between July 25, 2005 and July 30, 2006, and $3.533 per hour for the period between July 31, 2006 and February 28, 2007. (*Id.*) No minimum contribution rate is listed. It is undisputed that Bunge paid the maximum contribution rate of $2.886 for the period between October 1, 2004 and July 24, 2005. (Def.'s Br. Mot. Summ. J. 1-2.) It is also undisputed that Bunge continued to pay $2.886 for the periods from July 25, 2005 to July 30, 2006 and July 31, 2006 to February 28, 2007 despite the maximum contribution rates for those periods raising to $3.191 and $3.533, respectively, under the terms of the agreement. (*Id.*)

On September 5, 2007, the Trust sent Bunge a demand for $32,873.61 in delinquent contributions based on a payroll audit for the period between March 1, 2005 and February 28, 2007. (*Id.* at 4; Nast Aff. 2.) The payroll audit based its calculations based on the maximum contribution rate for each of the three periods. (App. to Pl.'s Mot. Summ. J. 67.) Bunge responded with a letter on October 8, 2007, contending it was never charged the maximum rate for the latter periods, and

that its continued contributions at the $2.886 rate were appropriate. (App. to Pl.'s Mot. Summ. J. 42.) On November 5, 2007, the Trust sent a letter acknowledging a $4,357.00 overpayment from Bunge and reducing the amount sought to $28,516.61. (Def.'s Br. Mot. Summ. J. 4-5.) Bunge's November 20, 2007 letter again denied the allegations of delinquency. (App. to Pl.'s Mot. Summ. J. 47.) On January 7, 2008, the Trust sent another letter acknowledging that rate increases were not automatic under the CBA, and that there was confusion as to which contribution rate applied for each period, but still insisting that Bunge owed the maximum rate of contribution for all three periods. (App. to Pl.'s Mot. Summ. J. 49-50.)

The Trust filed this action on October 13, 2009. Bunge filed a Motion for Summary Judgment on August 18, 2010 (doc. 19). In its Motion for Summary Judgment, Bunge argues that the Trust's interpretation of the CBA is inconsistent with both contract law and labor law. Specifically, Bunge argues that it was not obligated to make contributions at higher rates as alleged by the Trust because the Trust did not charge Bunge those rates until after the expiration of the CBA. The Trust filed its own Motion for Summary Judgment on August 26, 2010 (doc. 22). In its Motion for Summary Judgment, the Trust argues that its demand for the maximum contribution rate was not untimely because the alleged delinquencies occurred before the CBA expired, but were unable to be discovered until a routine audit was conducted. Both motions being ripe, the Court now turns to the merits of its decision.

## II.

## LEGAL STANDARD

Summary judgment is appropriate where the pleadings and record evidence show no genuine issue of material fact exists and that the movant is entitled to summary judgment as a matter of law.

FED. R. CIV. P. 56(c); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Only disputes about material facts preclude a grant of summary judgment, and "the substantive law will identify which facts are material." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

The movant bears the burden of proving no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). Where the non-movant bears the burden of proof at trial, the movant need not support its motion with evidence negating the non-movant's case. Instead, the movant may satisfy its burden by pointing to the absence of evidence to support an essential element of the non-movant's case. *Id*; *Little,* 37 F.3d at 1075.

Once the movant has met its burden, the non-movant must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. V. Catrett*, 477 U.S. 317, 325 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' …by 'conclusory allegations,'…by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, the non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita*, 475 U.S. at 587 (emphasis in original) (quoting FED. R. CIV. P. 56(e)). In determining whether a genuine issue exists for trial, the court will view all of the evidence in the light most favorable to the non-movant.

## III.

## ANALYSIS

The Trust's only claim in this action is that Bunge owes delinquent contributions to the employee benefit plan. (Pl.'s Original Compl. ¶1.) The Trust's claim arises under Section 515 of ERISA, which states:

- 4 -

> "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

29 U.S.C. §1145.

Accordingly, to prevail on its Motion for Summary Judgment, the Trust must establish 1) that Bunge was obligated to contribute the maximum rates under the terms of the CBA, 2) that such contributions are not inconsistent with law, and 3) that Bunge failed to make its obligated contributions. To prevail on its Motion for Summary Judgment, Bunge must establish the absence of one of these elements.

*A. Interpretation of the CBA*

Determining Bunge's obligations under the CBA requires first interpreting the terms of the CBA. Interpretation of the CBA is a question of law for the Court to decide. *See United Paperworkers*, 908 F.2d 1252, 1256 (5th Cir. 1990). Federal substantive law governs a breach of contract claim between an employer and a labor organization, but state law rules of contract interpretation may be utilized provided they do not conflict with federal labor policy. *See Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456-57 (1957); *United Paperworkers*, 908 F.2d at 1256.

The Court's role in construing a contract is to effectuate the intent of the parties. *Frost Nat'l Bank v. L & F Distribs.*, 165 S.W.3d 310, 311 (Tex. 2005). In determining the parties' intent, the Court looks to the objective intentions expressed in the contract itself. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). A contract should be construed according to its plain, ordinary meaning unless the contract itself shows the parties intended a different meaning. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). The Court must be mindful that the parties to a writing will not include a clause unless they intend it to have some effect. *Westwind*

*Exploration v. Homestate Sav. Ass'n*, 696 S.W.2d 378, 382 (Tex. 1985). If a certain construction of the contract renders a clause meaningless, that reading is unreasonable and therefore not favored. *Id.*

If a contract is susceptible to two or more reasonable interpretations, it is ambiguous and a fact issue exists as to the intent of the parties. *Balandran v. SafeCo Ins. Co. Of America*, 972 S.W.2d 738, 741 (Tex. 1998). If there is no ambiguity in an agreement, the court may construe the agreement as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). No fact issue exists where there is only one reasonable interpretation. When a contract can only be reasonably interpreted one way, "lack of clarity or a disagreement among the parties does not necessarily create an ambiguity." *Fort Worth Transp. Authority v. Thomas*, 303 S.W.3d 850, 857 (Tex. App.–Fort Worth 2009), citing *Univ. Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W. 3d 742, 746 (Tex. 2003); *Instone Travel Tech Marine & Offshore v. Int'l. Shipping Partners*, 334 F.3d 423, 431 (5th Cir. 2003) (quoting *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 591 (Tex. 1996)).

In their motions for summary judgment, both parties argue that theirs is the only reasonable interpretation of the CBA. The Court finds that Bunge offers the only reasonable interpretation of the CBA for the reasons discussed below.

The CBA states that Bunge will "make contributions to the Trust at the rates charged by the Trust," but the term "charged" is not defined in the agreement. Bunge argues the term "charged" requires the Trust to formally demand that Bunge pay an increased contribution rate, and that the demand must be made before the expiration of the CBA. The Trust argues the term "charged"is defined more flexibly under the CBA. (Pl.'s Resp. to Def.'s Mot. Summ. J. 6-7.)

It is a well-established principle of contract interpretation that undefined terms are to be given their plain and ordinary meaning unless the contract appears to intend otherwise. *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 663 (Tex. 2010) citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008). The plain meaning of the term "charged" is "[t]o demand a fee; to bill." BLACK'S LAW DICTIONARY 265 (9th ed. 2009). *Accord. Freundlich v. Southwestern Bell Wireless, Inc.*, No. 05-95-01755-CV, 1998 WL 312925 citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 377 (Philip B. Grove ed., 1993) ("A 'charge' is 'the price demanded for a thing or service.'").

Instead of listing the rates Bunge must pay for each period under the CBA, the CBA states that Bunge is obligated to pay the rates charged by the Trust "subject to the maximum amounts" listed. (App. to Def.'s Mot. Summ. J. 17.) Bunge argues that under these provisions, the Trust is free to charge Bunge up to the maximum amounts listed, but Bunge is not automatically obligated to pay the maximums without receiving some kind of charge or demand for payment. (Def.'s Br. Mot. Summ. J. 6-7.)

In response, the Trust acknowledges that "obviously, it would have been better to notify Bunge of an obligation immediately," but argues that no provision of the CBA explicitly addresses how and when Bunge is to be notified of rate increases. (*Id.* at 6.) The Trust interprets the CBA as allowing it to charge Bunge at any time, provided the rate charged does not exceed the agreed-upon maximums. (Pl.'s Br. Mot. Summ. J. 14.)

The Court finds the Trust's interpretation is unreasonable because it fails to give meaning to all provisions in the agreement. The CBA unambiguously requires Bunge to make its payments on a monthly basis, stating that Bunge's contributions must be made "by the twentieth day of each

month following the month in which the work determining the contributions was made." (App. to Def.'s Mot. Summ. J. 18.) Allowing the Trust to impose higher rates of contribution months after the work was completed, as it is attempting to do here, renders this provision meaningless. The only way to ensure all provisions of the CBA are given effect is to require that Bunge be charged the applicable rate before the rate payment is due.

Alternatively, the Trust argues that the CBA obligates Bunge to pay the maximum contribution rate if the actual costs of providing benefits meets or exceeds the maximum rate. (Pl.'s Br. Mot. Summ. J. 10-11.) The Trust's only support for this interpretation comes not from the terms of the CBA, but from the Trust Agreement, a document outlining the Trust's fiduciary duties to its beneficiaries. (*Id.*) The Trust Agreement is extrinsic evidence because it is not incorporated into or referenced by the CBA. Extrinsic evidence is only admissible for contract interpretation where the agreement is ambiguous on its face. *National Union Fire Ins. Co. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995). Here, the CBA unambiguously states that the Trust will charge Bunge the applicable rates. The Trust points to nothing within the four corners of the agreement suggesting that rates are contingent upon the actual costs of providing benefits, or that Bunge bears the burden of determining the contribution rate necessary to fully fund the benefits. Instead, the agreement explicitly states that the Trust will charge Bunge the desired rates, provided those rates do not exceed the agreed-upon maximums.

Even if the Trust Agreement were admissible, it would have no bearing on the interpretation of the CBA. Bunge is not a party to the Trust Agreement, and so cannot be bound by its terms or even presumed to have notice of them.(Def.'s Reply to Def.'s Mot. Summ. J. 6.)

Having considered the arguments made by both parties, the Court finds that Bunge offers

the only reasonable interpretation of the CBA.[1]  The CBA requires Bunge to pay the amount charged by the Trust up to the agreed-upon maximum rates.  To charge Bunge an increased rate, the Trust must demand a higher payment from Bunge.  Because Bunge is obligated to make its payments by the twentieth day of each month, the Trust's demand should occur before that time.

*B. The Trust's ERISA Claim*

Having determined that Bunge offers the only reasonable interpretation of the agreement, the Court next addresses whether Bunge was obligated to contribute the maximum rate of contribution under the terms of the CBA.  The Trust's ERISA claim asserts that Bunge was obligated to pay the maximum rate of contribution for each period under the CBA, and failed to do so.  (Pl.'s Original Pet. 3.)  It is undisputed that Bunge paid $2.886 per hour for the second two periods under the CBA.  (*Id.*)The only question remaining is whether the summary judgment evidence shows Bunge was actually charged the maximum contribution rates for those periods in accordance with the terms of the CBA.  If so, Bunge is delinquent in its contributions and the Trust is entitled to summary judgment under ERISA Section 515.

The parties agree that the CBA expired on February 28, 2007 and the first time Bunge was formally charged the maximum contribution rates was when the Trust sent a demand letter on September 5, 2007. (Def.'s Br. Mot. Summ. J. 4.) Bunge acknowledges that the Trust was free to charge the maximum contribution rates during the pendency of the CBA, and that the Trust can bring suit after the expiration of the agreement to recover any payments it charged but did not

---

[1] Having determined that Bunge offers the only reasonable interpretation of the CBA, the Court need not consider Bunge's arguments that the Trust's interpretation of the agreement violates the Labor Management Relations Act. (Def.'s Br. Mot. Summ. J. 8.)

receive from Bunge. (*Id.* at 7.) However, Bunge argues the Trust failed to charge Bunge the maximum rates before the CBA expired and so is barred from recovering the difference between the payments made by Bunge and the maximum contribution rates. (*Id.*) The Court agrees.

It is a well-settled principle of contract law that a party cannot breach an expired agreement. Similarly, a party to a collective bargaining agreement cannot be held liable where the alleged breach occurred after the expiration of the agreement except under limited circumstances. *See Litton Financial Printing Div., A Div. of Litton Bus. Sys., Inc.*, 501 U.S. 190, 205-06 (1991). In *Litton*, the Supreme Court held that a post-expiration grievance is only actionable where it "involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Id.* The Trust fails to show that any of these circumstances is present here.

In its Motion for Summary Judgment, the Trust argues that the present dispute involves occurrences that occurred during the pendency of the CBA. (Pl.'s Br. Mot. Summ. J. 21-22.) The Trust advances several arguments in support of its contention that Bunge was charged the maximum contribution rates while the CBA was in effect, and thus is entitled to prevail on its Section 515 claim.

First, the Trust argues that the increased maximum rates of contribution for each period under the CBA is evidence that the parties anticipated that contribution rates would increase over time. (Pl.'s Response to Def.'s Mot. Summ. J. 6.) The fact that higher rates may have been contemplated by the Trust and Bunge at the time the CBA was drafted in no way alters the Trust's obligation to charge Bunge the applicable rate. It merely supports what the parties already agree

on–that if Bunge had been charged the maximum contribution rates during the second and third periods, it would have been obligated to pay them.

Additionally, the Trust argues that its routine audit conducted in August, 2007 revealed Bunge's delinquencies, and that Bunge did not raise any disputes about the conclusions of the audit. (Pl.'s Response to Def.'s Mot. Summ. J. 9; Nast Aff. 2.) Bunge need not dispute the accuracy of the audit because the audit's conclusions are irrelevant to this dispute. The Independent Auditor conducted the audit by applying "certain procedures...which were agreed upon by the [Trust]." (App. to Pl.'s Mot. Summ. J. 67.) The audit assumed the Trust had charged Bunge the maximum contribution rates for each period, and thus only establishes that Bunge would be delinquent if such rates had been charged before the expiration of the CBA. (App. to Pl.'s Mot. Summ. J. 77.)

Finally, the Trust argues that actual costs exceeded the agreed-upon maximum rates of contribution, and seems to imply that the only reason Bunge is not obligated to pay the full cost of benefits is that the CBA caps Bunge's contributions at the agreed-upon maximum rates. (Pl.'s Br. Mot. Summ. J. 11; App. to Pl.'s Mot. Summ. J. 3.) However, the Trust can point to no provision in the CBA making Bunge's contributions contingent on the actual costs of providing benefits, or holding Bunge responsible for fully funding employee benefits. The Trust's only evidence for this contention is based on the Trust Agreement, to which, as discussed above, Bunge is not a party.

Because the Trust offers no evidence that it charged Bunge the maximum contribution rates before the expiration of the CBA, it fails to establish that Bunge was obligated to pay the maximum contribution rates for the period at issue. Absent evidence that Bunge was obligated to pay the maximum contribution rates, the Trust cannot establish the first element of its Section 515 claim. Bunge was not delinquent under the terms of the agreement, and thus is entitled to judgment as a

matter of law.

## IV.

## CONCLUSION

The Court **DENIES** the Trust's Motion for Summary Judgment because the Trust failed to establish all elements of its Section 515 claim. Having determined the absence of an essential element of the Trust's claim, the Court finds that Bunge's Motion for Summary Judgment should be and hereby is **GRANTED**.

**SO ORDERED.**

**SIGNED March 8, 2011**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE